WOLTING *v.* VANDEN BOSCH.

CANCELLATION OF INSTRUMENTS—DEEDS—MENTAL INCOMPETENCY.
In a suit for the cancellation of a deed on the ground of plaintiff's mental incompetency to execute same, where the evidence fairly shows that plaintiff was of insufficient intelligence to understand the transaction by which he deeded his farm to defendants who mortgaged it for the initial payment and gave plaintiff a second mortgage for the balance, subject to cancellation on proof of his death, and there is no explanation of the unusual transaction, a decree in favor of plaintiff was justified.

Appeal from Ottawa; Cross (Orien S.), J. Sub-. mitted February 7, 1922. (Docket No. 185.) Decided October 2, 1922.

Bill by Harm Wolting and others against Koene VandenBosch and others to set aside a deed. From a decree for plaintiffs, defendants appeal. Affirmed.

*Fred T. Miles,* for plaintiffs.

*Diekema, Kollen & Ten Cate,* for defendants.

McDONALD, J. The bill in this cause was filed to set aside a deed of conveyance to 40 acres of land in Olive township, Ottawa county. The plaintiff Harm Wolting was the owner of the property. The other plaintiffs are his brothers and only heirs at law. The defendant Koene VandenBosch is the father of Johannes VandenBosch. The conveyance was made to defendants Johannes VandenBosch and Jennie VandenBosch, his wife. In May, 1910, Harm Wolting leased the premises in question to the defendants Koene VandenBosch and Johannes Vanden-

Bosch, for a period of 11 years for the sum of $1,300, to be paid in semi-annual payments of $60 each.   By the terms of the lease the lessees were allowed to move a dwelling house on to the premises and to remove it when their term expired.   On the 7th day of October, 1916, the plaintiff Harm Wolting, and the two defendants, Koene and Johannes VandenBosch, went to Zeeland State Bank, and there plaintiff executed a warranty deed to Johannes and Jennie VandenBosch, his wife, for a consideration of $2,500 to be paid as follows:   $1,000 in cash, and their note secured by mortgage on the property for the balance.   After receiving the deed, the defendants immediately gave a mortgage to the Zeeland State Bank to secure a loan of $1,000.   This money they used to make the first payment.   They then executed a second mortgage for $1,500 to plaintiff to secure the payment of the balance of the purchase price.   This mortgage contained the following clause:

"It is agreed that upon satisfactory proof being furnished of the death of Harm Wolting, the said party of the second part, this mortgage is to be immediately canceled and discharged without further payments."

It is the theory of the bill that Harm Wolting was of weak intellect; that he had never transacted any business except of the simplest kind, and was easily influenced, and that he was mentally incompetent to understand the transactions involved. That the consideration was inadequate, and that he did not know the mortgage contained a clause that in case of his death it should be canceled, and that he was influenced to make the deed and dispose of the property through the fraudulent conduct of the defendant Koene VandenBosch, who took advantage of his mental weakness and ignorance of business.   The defendants answering denied all allegations of fraud or influence of any character, and assert that plaintiff

was mentally competent, and that the conveyance was made by him voluntarily and with a full understanding of the entire transaction.    On the hearing the circuit judge found that at the time of the conveyance the plaintiff was mentally incompetent, and that he was defrauded in making the sale; that the deed should be set aside and possession of the premises restored to him; that the real estate mortgage to the Zeeland State Bank remain as a first lien upon the premises; that the second mortgage be canceled, and that defendants be allowed the sum of $1,250 for improvements made by them, less $540 rent for the 4½ years' use of the farm, and less interest paid to the Zeeland State Bank, amounting to $240, and less $146.35 for taxes, and less the interest paid to Harm Wolting on the second mortgage, amounting to $360.    From a decree entered in accordance with these findings the defendants appealed.

It was first urged by counsel that the deed should be set aside because the plaintiff was mentally incompetent and did not understand the transaction.

The evidence fairly shows that the plaintiff was an uneducated man of weak intellect, living in the most primitive way and unaccustomed to transacting any business except of the simplest character.    It was the opinion of his neighbors, who had known him intimately for years, that he had not sufficient intelligence to understand the transaction in which he was involved with the defendants.    But we think the most convincing proof of his mental incapacity is to be found in the transaction itself.    He owned 40 acres of good land free of any incumbrance of the value, as the testimony shows, of $3,500.    He refused an offer of $3,500 from a neighbor who owned adjoining property, but sold it to the defendants for $2,500, allowing them to mortgage it for $1,000 in order to make the first payment to him, and taking to him-

self for the balance of the purchase price a second mortgage, which by its terms was to be canceled and discharged without payment on satisfactory proof of his death. The first mortgage was to secure a loan of $1,000 to the Zeeland State Bank and became due five years before the mortgage to the plaintiff. This, together with the fact that it was to be discharged without payment on plaintiff's death, rendered the second mortgage of no negotiable value. Unless there was some reason for this unusual and peculiar bargain, it is significant of plaintiff's mental incompetency. The record discloses no reason for it. He was in no way related to the defendants, had not been living with them, and was under no obligation to them. He had three brothers, his only heirs at law, with whom he was on friendly terms, and it does not appear why he should prefer the defendants to them in disposing of his property. These facts, supplemented as they are by other evidence of mental incapacity, indicate rather strongly that he had not sufficient intelligence to understand this transaction, which was not the usual simple conveyance by warranty deed. We are convinced by this evidence that when plaintiff executed the deed in question and consented to be paid by mortgages on his own property, he was not mentally competent, that he did not understand and appreciate the effect of the transaction, that the price was inadequate, and the terms were unfair and unequitable, and he did not have sense enough to know it.

His mental incompetency having been established, it becomes unnecessary to discuss the question of fraud or undue influence. It should be said, however, in fairness to the defendants, that the allegations of the bill as to the fraudulent manner in which it is claimed they gained ascendancy over the mind of the plaintiff are not supported by the proofs. There is no direct evidence of improper persuasion or fraudulent in-

fluence. Whether under the circumstances equity should infer fraud, we do not say. The circuit judge made a correct disposition of the case. His decree is equitable and just to both parties.

It will be affirmed, with costs to the plaintiffs.

FELLOWS, C. J., and WIEST, CLARK BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.